JOSEPH A. McCONNELL, Appellant, *v.* JACOB BRILLHART, Appellee.

### ERROR TO STEPHENSON.

To take a case out of the statute of frauds, no form of language is necessary ; anything from which the intention may be gathered is sufficient, whether in memoranda books, papers or letters.

These must contain enough on their face, or by reference, to fix the names of the parties, the interest or property to be affected, and the consideration to be given.

The party to be charged, or his agent, must sign the obligation; and parol proof of agency will hold the party who acts by agent.

The signing may be in the caption, in the body or at the end of an instrument.

The contract must be signed with an intent to enter into it, be mutual, reciprocal and upon good consideration.

Such contracts are not subject to alteration, but mistakes in them may be corrected —or the identity of parties, or the quantity of an interest, may be sometimes established by extrinsic facts.

THIS was a bill filed in the Circuit Court of Stephenson county,

in August, 1853, by Jacob S. Brillhart, complainant, against Joseph A. McConnell, to compel a specific performance.

The bill sets forth that on the 1st day of July, A. D. 1853, one Robert McConnell, in consideration of the written undertaking of said Brillhart to pay him, the said Robert, and the said Joseph A., the sum of one thousand dollars by the 1st day of August, 1853, for the N. E. quarter of Section 25, and the S. E. quarter of Sec. 25 T. 26 N., R. 7 E., 4th principal meridian, in the State of Illinois, the said S. E. quarter belonging to said Robert, and the N. E. quarter to said Joseph, did make under his hand and seal a deed for said S. E. quarter, and placed the same in the hands of said Joseph A., and directed him to deliver the same to said Brillhart, upon the payment of said $1,000, for said land,—$500 to said Robert, and $500 to said Joseph. And said bill charges that said Joseph A. is now in possession of said deed. That on the 3rd day of August, A. D. 1853, said complainant tendered said sum of $1,000 to said Joseph A., for the use of said Robert and Joseph A., and demanded said deed, with which demand said Joseph A. refused to comply.

Said complainant also alleges that on the 2nd day of July, A. D. 1853, said defendant was seized in fee of said N. E. quarter of said section, and that he entered into a written agreement to sell the same together with said S. E. quarter of said section, to said complainant for the sum of $1,000, and that he would on the 1st day of August, 1853, on the payment to him of $1,000— five hundred dollars for the land of said Robert, and five hundred dollars for Joseph A.—make to said complainant a good and sufficient deed for the same ; that on said first day of August, said sum of money was tendered and demand made for a deed, but that said defendant then refused to execute the same ; and said complainant avers his readiness to pay said sum ; and seeks discovery, on oath, as to matters above charged.

And said complainant prays that said defendant be decreed to deliver to him the said deed so left in his hands ; and also to " specifically perform said agreement to convey the tract of land secondly above described."

The defendant answered on oath to the matters charged in said bill, and denies that said Robert McConnell placed in his hands the said deed in the said bill mentioned, with instructions to deliver the same to the said complainant upon the payment of five hundred dollars to said defendant for the use of said Robert ; and denies having any such deed in his possession, or under his control, at the time this suit was commened, or since ; denies that any tender was made to defendant, of $500 on the 3rd of August, 1853, for the use of said Robert, in payment for said tract

of land; denies entering into a written agreement with complainant to sell him the S. E. quarter of Section 25, for $500, or that tender was made thereof on the 1st day of August, 1853, in payment therefor.

Defendant admits that he wrote a letter to Dr. Michener, of Freeport, Ill., dated about the 17th May, 1853, in which he informed Dr. Michener that his and defendant's father's lands lying contiguous to his (Michener's,) would be sold for one thousand dollars, and that said offer would hold good till July 1st, 1853, but that said letter contained no description of the land referred to; that about July 1st, 1853, defendant received a letter bearing date June 22, 1853, and signed by J. S. Brillhart, stating that the said Brillhart did not get the money he had expected; that a delay of about two weeks was necessary for him to get the money, and asking an extension of two weeks from the 1st day of July, and saying that at the end of that time "he would be ready to fulfill his agreement for this land."

That afterwards, on the 24th June, 1854, said claimant wrote defendant from Freeport, Ill., that he had so arranged his business that he could pay at any time if said defendant would "come out" and make a deed to him; and inquiring of said defendant when he would "be out."

That defendant wrote a letter in reply to the first of said letters, stating that "if said complainant would be ready by Aug. 1st, 1853, perhaps this defendant would be out to Illinois prepared to make a deed for lands."

Defendant denies that any written agreement was ever made between him and said complainant, and claims the benefit of the statute of frauds.

That on the 9th of July, 1853, defendant received another letter from said complainant, stating that said complainant was "ready at any time;" advising defendant to execute a power of attorney to Dr. Michener, to make deed, saying that complainant desired a warrantee deed, and that he would, if Michener made deed, give him a draft on any bank defendant might direct. And defendant prays to be dismissed, etc.

To which answer complainant filed replication.

Said cause came on for final hearing upon bill, answer, pleadings and proofs, both written and oral; and at April term, A. D. 1856, said Court, SHELDON, Judge, presiding, rendered its decree, setting forth that it appears upon the proofs made in the cause, that defendant can make to the complainant a good title to a part of the land described in complainant's bill, to wit: the N. E. quarter of Sec. 25, T. 26 N., R. 7 E. 4 principal meridian, in the county of Stephenson, and State of Illinois; and it appearing

McConnell *v.* Brillhart.

that the defendant did agree to convey said land to complainant, as stated in said bill, and that said defendant agreed to convey, or cause to be conveyed, the land above described, together with the said south-east quarter of said section belonging to one Robert McConnell, for the sum of $1,000, and that said defendant was to have $500 from complainant for the land first above described, and that said complainant has in all things complied with the terms of said agreement; it is therefore ordered, adjudged and decreed, that complainant, within thirty days, pay to the clerk of this court, for the use of the defendant, the sum of five hundred dollars, with interest from the 1st day of August 1853, also the further sum of thirty dollars for taxes, etc.

And that if said Joseph A. McConnell shall, within thirty days, file his election, in writing, to cause a conveyance of both of said quarter sections to be made to complainant for the sum of $1,000, with interest, and thirty dollars to be applied for taxes, etc., and shall within that time make conveyance to said complainant thereof, on said complainant paying to him said sums, then the said complainant shall, within thirty days, pay to said clerk, for the use of said defendant, said last named sums, and in default of so doing, shall not be entitled to any conveyance hereunder.

Upon the rendition of the foregoing decree, the said defendant prayed an appeal to the Supreme Court.

The following written testimony was introduced. First, a letter addressed to one Dr. Michener, as follows:

McConnellsville, O., May 17, '53.

Dr. Michener:

Sir—My brother arrived home last week in good spirits, and giving in his wild imagination a glowing description of your country. He informs me of the rapid growth and continued prosperity and advancement of that portion of our wide domain.

He also wishes me to drop you a note informing you whether *we* would dispose of some land lying contiguous to yours, and on what terms, as a friend of yours desired the information. In the first place, *we* are not eager to make sale, for I have serious thoughts of commencing improvements thereon the present summer. Had it not been owing to some indisposition, I would have arrived as early as this epistle, but cannot now tell how long it will be, as I am troubled with the chills and fever, occasionally, but will endeavor to break it up as early as possible. *Provided, however, any person sees fit to give one thousand dollars for the half section, and informs accordingly,* one of us *will go out immediately with full power to convey the same to the purchaser.* Terms, cash in hand. Should this seem too steep for the buyer we will hold on, and if too low on our part, will abide the consequences.

And this agreement (proposition) will hold good until the first of July.

Yours, &c.,

To Dr. B. Michener.                JOSEPH A. McCONNELL.

McConnell *v.* Brillhart.

McCONNELLSVILLE, O., July 2, '53.

MR. BRILLHART:

SIR—We received your note on yesterday, and hasten to reply. We feel willing to extend the time you require, although it has kept me at home during the past month awaiting your arrival, and do not feel like incurring much expense in order to effect a sale at this time. *And I am unable to tell* whether you expect to come again to Ohio, or look for *us* to go out there; but I think I shall go out to Illinois about the first of August, and if you will hold yourself in readiness, and let us know accordingly, I will go prepared to make conveyances, &c. Perhaps you are aware my father has not received his patent for his part, but no doubt it is at Dixon by this time; please write.

JOSEPH A. McCONNELL.

Although not offered in evidence, the following letters from the complainant to the defendant are stated in their answer to be *all that ever were received by the defendant,* and show clearly that no agreement was completed.

STEPHENSON HOUSE, FREEPORT, June 22nd, '53.

MR. McCONNELL, ESQ.:—I have been to Ohio last week, but could not arrange my matters so that I could come and see you before I left. I did not get my money as I expected, but got checks which I had to send to New York to get indorsed, and as soon as they will be returned to me (which will be about two weeks) I will be there ready to fulfill my agreement for this land. This delay was unavoidable on my part, and hope you will extend the time about two weeks from the first day of July. As soon as I will be ready I will let you know. Please and let me hear from you soon, and also if I can send a telegraph dispatch to you, as it takes some time for a letter to go there.         Yours, &c.,

J. S. BRILLHART.

FREEPORT, ILL., June 24th, 1853.

MR. McCONNELL:

SIR—I wrote to you a few days ago that I would not be ready to pay you that money for your land by the first of July; but my business has made a turn so that I can pay you at any time, *if you will come out* and make a deed to me. I would like to hear from you, to know what time you will be out, so that I will be here when you come. *I would like to know soon,* for I want to build on it this fall, and would also like to get some broke in July, *or as soon as I can hear from you.*
            Yours respectfully,                    J. S. BRILLHART.

FREEPORT, ILL., July 9, '53.

MR. McCONNELL:

SIR—Yours of the 4th was received this morning, and in reply I would say that I am ready at any time. · I should think the best way would be for you to send a power of attorney to Doctor Michener, and then he could make me a deed. I want warrantee deed. By so doing you would save the expense of coming out to Ill. I intend to go to Iowa in a week or ten days. If I will go I will leave the money here for you, and if Michener will make me a deed I will give him a draft on any bank you may direct. I would like to improve the land this fall, or build a house,

at least. It is more than likely that I will come to Ohio in five or six weeks, but if I will I shall leave the money, so that Dr. Michener can get it. Please and answer soon.

Yours respectfully,         J. S. BRILLHART.

Upon the hearing of said cause, the following *oral* testimony was introduced:

Barah Michener, a witness called on the part of the complainant, testified that he was acquainted with the complainant and defendant; that he has acted as agent for complainant, Brillhart, in negotiating with defendant, a purchase by complainant of defendant, and Robert McConnell, of land in Stephenson county, Ill.; that about the last of July or first of August, 1853, complainant informed witness that he had agreed to pay one thousand dollars for said land, and in his absence left that sum with witness to pay defendant upon delivery of deed; that witness informed defendant that he was prepared to pay the money and receive the deed; that witness showed defendant complainant's funds, to which he made no objection, but declared himself satisfied with them; that the land negotiated for is the east half of section twenty-five, township twenty-six north, of range seven east, in Stephenson county, Illinois; that he has seen letter dated McConnellsville, O., May 17, 1853; that it was written by Joseph A. McConnell's witness; that the land described in said letter is the same described in former answer; that said letter was an answer to one written by witness to defendant; that complainant replied to McConnell's letter; that defendant came to Freeport near first of August, 1853; that witness, as agent for complainant, tendered the defendant the sum of one thousand dollars for the land mentioned; that defendant told witness he had brought his father's deed along; that Joseph A. McConnell told witness that the deed in his hands from his father to complainant, was for one of the quarters composing east half of section twenty-five, township twenty-six, range seven; that witness saw no other tender of money by complainant or his agent to defendant, except as before stated; that at the time of the correspondence with McConnell, witness owned land contiguous to land above described.

James Michener, a witness called on the part of complainant, testified: that he was acquainted with complainant and defendant; that defendant showed him deed of south-east quarter of section twenty-five, township twenty-six, range seven east, made by Robert McConnell to complainant, and stated that Robert McConnell gave the same to him, and instructed him to deliver said deed to complainant, upon his paying five hundred dollars for the same.

The appellant assigns for error, that: 1st, the court erred in rendering decree for complainant, necessary parties to said suit being omitted; 2nd, the court erred in rendering decree for a specific performance of part of the contract; 3rd, the evidence does not sustain the bill; 4th, the statute of frauds is a complete answer, as no written contract was proved; 5th, the pretended contract was not *mutual* nor certain, either as to terms or description of property; 6th, such decree of said court was contrary to evidence; 7th, such decree was contrary to law.

HIGGINS, BECKWITH and STROTHER, for Appellant.

U. D. MEACHAM, for Appellee.

SCATES, C. J. The leading principle that governs the case is one requiring contracts, or notes of memorandums of the contract to be in writing, and signed by the party to be charged therewith, or by some one by him thereunto lawfully authorized, under our statute of frauds and perjuries, which is a copy of the English statute.

Cases have been excepted out of the statute, where parol contracts have been in part performed by payments, possession and improvements, but I do not propose to examine or discuss this class.

Of cases within the statute, courts have been called upon to discuss every clause of it, and apply it to every variety of circumstances and facts; in ascertaining what sort of writing is sufficient, what it shall express and show upon its face, as to parties, description of the property, terms, conditions and price, who shall sign it—principal and agent—what will constitute an agency, what is a sufficient signing, &c., &c.

And 1st. There is no form of language necessary; anything from which the intention may be gathered, as in other contracts, will be sufficient.

2. Any kind of a *writing*, from a solemn deed, down to mere hasty notes or memoranda in books, papers or letters, will suffice. *Doty* v. *Wilder*, 15 Ill. R. 407; *Johnson* v. *Dodge*, 17 Ill. R., *post; Buckmaster* v. *Harrop*, 7 Ves. Jr. R. 341, note 3; *Clerk* v. *Wright*, 1 Atk. R. 12; 1 Humph. R. 326; 10 Ohio R. 402; 2 Bibb R. 98; 4 Bibb R. 466; 15 Vermt. R. 685; 1 John. Ch. R. 273; 13 Wend. R. 53; 1 Paige Ch. R. 434; 6 Wend. R. 103; 15 Pick. R. 159; 10 Conn. R. 192.

3. The writings, notes or memoranda shall contain on their face, or by reference to others that is traceable, the names of the parties, vendor and vendee, a sufficiently clear and explicit description of the thing, interest or property, as will be capable

of identification, and separation from other of like kind, together with the terms, conditions and price to be paid, or other consideration to be given. *Barry* v. *Coombe*, 1 Pet. R. 647, 650; *Doty* v. *Wilder*, 15 Ill. R. 407; *Blagden* v. *Bradbear*, 12 Ves. Jr. R. 466; 1 Atk. R. 12; *Clinan* v. *Cooke*, 1 Sch. and Leff. R. 31; *Champion et al.* v. *Plummer*, 4 Bos. and Pull. R. 252; *Dock* v. *Hart*, 7 Watts and Serg. R. 172; *Pipkin* v. *James*, 1 Humph. R. 326; *Anderson* v. *Harold*, 10 Ohio R. 399; 5 N. Hamp. R. 540; 1 N. Hamp. R. 158; *Allen* v. *Roberts*, 2 Bibb R. 98; 4 Bibb R. 466; 3 A. K. Marsh. R. 443; 6 B. Monroe R. 100; 6 Gill Md. R. 66; 9 Gill Md. R. 205; 15 Vermt. R. 685; 1 John. Ch. R. 273; 13 John. R. 296; 5 Cow. R. 162; 1 Paige Ch. R. 434; 6 Wend. R. 103; 15 Pick. R. 159; 16 Maine R. 458; 10 Conn. R. 192; 4 Watts and Serg. R. 221;

4. The party to be charged, or vendor of land, &c., or his lawfully authorized agent, shall sign it.

5. A verbal or parol agency is sufficient for this purpose. *Doty* v. *Wilder*, 15 Ill. R. 407; *Johnson* v. *Dodge*, 17 Ill. R., *post; Clinan* v. *Cooke*, 1 Sch. and Leff. R. 31.

6. The signing will be sufficient in the caption, or body of the memorandum, or by a subscription to it. 10 Ohio R. 402; 1 Pet. R. 647, 650.

7. The contract or obligation must be signed with intent to enter into it, must be mutual, reciprocal and upon good or valid consideration. *Dorsey* v. *Packwood*, 12 How. U. S. R. 134; *Anderson* v. *Harold*, 10 Ohio R. 402; 1 Paige Ch. R. 434; 6 Wend. R. 103; 21 Wend. R. 139; 1 Barb. Ch. R. 499; *Getman et al.* v. *Getman*, 4 Paige Ch. R. 305; 16 Maine R. 458; 4 Watts and Serg. R. 221.

Contracts within the statute of frauds, are no more subject to change or alteration, or proof of their contents, &c., than other written contracts. Yet mistakes may be corrected. 11 Ohio R. 109. And the same degree of certainty, required in other written contracts, will be sufficient in contracts under the statute of frauds; *id certum est, quod certum reddi potest*, is a maxim equally applicable to both.

So a return on an attachment of a levy on "all the right, title, and interest in and to a certain piece or parcel of land, with the buildings thereon, situate in Columbia street, at the southerly part of Boston, and on one piece of land and the buildings thereon standing, being situate in Pleasant street in said Boston, which the within named Benjamin Huntington has to the estates before mentioned," was held sufficiently certain, and parol evidence might identify it, by showing Huntington had but one piece on either street. *Whitaker* v. *Sumner*, 9 Pick. R. 311.

The same exceptions to the general rule of the inadmissibility

of parol to explain written contracts, will apply here. The intention is to govern, and latent ambiguities may be explained, if any exist. The court may, therefore, inquire into the circumstances surrounding the parties, to gather every material fact relating to the person, who claims to be interested, and to the property which is claimed as the subject of disposition, for the purpose of identifying the person or thing intended, or the quantity of interest, where a knowledge of extrinsic facts, can in any way be made ancillary to the right interpretation of the words used. 1 Greenl. Ev., Secs. 287, 288, note 3, p. 364. As a description, "one half of the farm on which he, said Moses, then dwelt," parol admitted to show the land he lived on. *Doolittle* v. *Blakesley*, 4 Day R. 265; *Venable* v. *McDonald*, 4 Dana R. 336.

Testing the contract presented in these letters, by the principles laid down, and we find nothing wanting to show a valid contract within the statute of frauds.

Dr. Michener swears he wrote to plaintiff, as agent for defendant, to know whether he would *dispose* of (or they, as is insisted,) some land lying *contiguous* to his, and on what *terms*. The answer was a general offer to sell—"if any person sees fit to give one thousand dollars for the half section, and informs us accordingly, *one of us*, will go out immediately, with full power to convey the same to the *purchaser*. Terms, cash in hand. Should this seem too steep for the *buyer*, we will hold on; and if too low on our part, we will abide the consequences. And this proposition will hold good until the first of July."

In his letter of July 2nd, plaintiff acknowledges the receipt, on the day previous, of defendant's acceptance of his offer and terms, by letter. Their subsequent letters fully show the same, and that the 1st of August was fixed upon for the day of payment and conveyance.

Two objections are urged against these letters, for want of certainty in the vendors, and in the description of the land.

These objections are more specious than solid. There is no uncertainty as to the other vendor, if there were two, as plaintiff expressly refers to his father as the other, when he remarks, "perhaps you are aware, my father has not received his patent for his part, but no doubt it is at Dixon by this time." But as his father never signed the letters, he did not become a party to the contract. The plaintiff stands alone, as vendor of both tracts; and accordingly brought a conveyance with him, from his father, to enable him to perform his agreement. He did sign, and is bound, and may not plead the statute for another, to avoid his own valid agreement. Having title to half only, defendant might, at his own election, rescind, or treat it as void,

and a fraud on him, in selling him land, to which plaintiff had no title. But he may, at his election, compel a conveyance of that part to which plaintiff has title and resort to him for damages for the remainder. *Mc Connell's heirs* v. *Dunlap's devisees*, Hardin R. 41.

Lastly, the description of the land as a half section contiguous to Dr. Michener's, is susceptible of identification by parol, by showing that the half section, described in the bill, had been entered by McConnells, father and son; that it lay adjoining the only land owned by witness, or was the only lands owned by them adjoining any land of witness, as was shown in the cases in 4 Day R. 265 and 4 Dana R. 336. This has been done, and we think the bill fully sustained by the proof.

*Decree affirned.*