(No. 24844.—

WALTER HOFFMAN, Admr., Appellant, *vs.* EDWARD HOFFMAN *et al.* Appellees.

*Opinion filed December 19, 1938.*

FRED BIER, and FARMER, KLINGEL & BALTZ, for appellant.

LOUIS J. GROSSMANN, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The sole issue presented for decision by this appeal is whether the following written instrument was signed by Mary E. Hoffman within the contemplation of the Statute of Wills:

"Wrote the 18th of April, 1937.

"I, Miss Mary E. Hoffman, I am going to write my will on this paper so if something shought happen to me all that belons to me I will to my brother Wallie S. Hoffman, the brick house the furniture and and the money I have coming if the big house will get saled. I want to let you know that this is my own handwriting My witness below

    Ed Bien
    Henry Rodenberg
    Paulina Rodenberg"

Mary E. Hoffman, a spinster, on April 18, 1937, was fifty-six years of age and lived in Belleville. She died on April 26, 1937. Her estate consisted of both real and personal property. She left surviving as her only heirs-at-law, three brothers, Walter, Edward and August, a sister, Pauline Ray, and a niece and a nephew, the children of a deceased sister. Walter Hoffman filed a petition in the probate court of St. Clair county to probate the document previously set forth as his sister's last will and testament. Objections interposed by the other heirs were overruled and the instrument admitted to record. Thereafter, Walter Hoffman was appointed administrator with the will annexed. After a hearing *de novo,* upon an appeal prosecuted by two of the objectors, the circuit court entered an order denying probate of the instrument. From that order Walter Hoffman, individually and as administrator, has prosecuted a further appeal to this court.

The three persons who witnessed the document in controversy, Paulina Rodenberg, an aunt of the deceased, her husband, Henry, and their son-in-law, Ed Bien, testified in behalf of Walter Hoffman, the appellant. On April 18,

Paulina Rodenberg was visiting her niece who was then suffering from a serious ailment and had been receiving medical attention for several weeks. While Bien was waiting outside the house to take her to a doctor's office in his automobile, Mrs. Rodenberg summoned him to witness the document. From Bien's testimony it appears that Mary Hoffman was seated at a table in the kitchen and had the instrument in question before her when she said: "I want you to be a witness to my will. Will you sign it?" Bien signed, as requested. He was the only person who signed as a witness on April 18. Mary Hoffman also asked her aunt to sign the document but the latter declined, explaining that she did not have her spectacles and could not see well enough to write without them. Mrs. Rodenberg testified that Mary Hoffman said the document was her last will, that she, herself, had written it and that if she did not come back her property should go to her brother Wallie. A day or two later, both Henry and Paulina Rodenberg affixed their signatures to the document as witnesses at Miss Hoffman's request, in her presence, and in the presence of each other. Rodenberg testified that while they were in the kitchen Miss Hoffman took the instrument from a glass cupboard, exhibited it to him, and told him that it was her last will and if she should not come home her property was to go to her brother Wallie. According to Rodenberg, she declared: "This is my last writing. My own handwriting in case if I shouldn't come home. I am going to be operated. I want you and your wife to sign that." Mrs. Rodenberg testified to substantially the same effect adding that when Miss Hoffman took the will from the cupboard and laid it on the table, she said: "Here is my last will, and, Pauline, you should sign it." Walter Hoffman was present on the two occasions when the witnesses signed.

Section 2 of the act in regard to wills, (Ill. Rev. Stat. 1937, p. 3191,) so far as pertinent, provides that: "All wills, testaments and codicils, by which any lands, tene-

ments, hereditaments, annuities, rents or goods and chattels are devised, shall be reduced to writing, and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses." The instrument, with the exception of the signatures of the witnesses, is, according to the opinions expressed by Henry and Paulina Rodenberg, in the handwriting of the deceased. She did not, however, subscribe her name to the document. Whether the instrument was signed by the deceased, within the contemplation of the statute, depends upon whether her name was written or declared as an authenticating signature. (*Bamberger* v. *Barbour,* 335 Ill. 458.) The decisive question is not whether the deceased intended the instrument to be her will, but whether she intended the name appearing in the exordium clause to be her signature. Her intention in this regard must be established by a preponderance of the evidence. In the *Bamberger case* this court, construing a document similar to the one before us on this appeal, observed: "There is one well-known purpose in placing the name of the testator in the exordium clause—it is by way of description. It cannot be said, therefore, that the deceased had no other purpose or intent in placing his name where it appears in this instrument than to make it his signature." Here, the evidence narrated discloses no statement by Mary Hoffman that the descriptive name as written by her was intended as her authenticating signature. Nor does the instrument itself contain any such declaration. Appellant has failed to establish by a preponderance of the evidence that the deceased intended her name at the beginning of the purported will to be her signature to the instrument. It follows that the instrument was not signed by the decedent as required by the Statute of Wills and that its probate was properly denied.

The order of the circuit court is affirmed.

*Order affirmed.*